1-24-0360-14.A. Ray. Morning, Counsel. How much time do you want to reserve for your robo? I'd like to reserve four minutes. Four minutes. Okay, great. And whenever you're ready. Thank you. May it please the Court. Counsel. My name is Kim Jansen and I am here this morning to speak on behalf of Mr. Dante Ray. As you know from reviewing the briefs, Mr. Ray was convicted on a felony count of robbery and sentenced to three years in prison. But this was not what we generally think of as a typical robbery. In a typical robbery, for example, there's not usually a protracted dialogue about the robber's life story in an appeal to the sympathy of the supposed victim. In a typical robbery, the perpetrator doesn't generally wait for the person he's attempting to rob to suggest the idea of giving him money. In a typical robbery, the victim doesn't need five minutes to think about it and process it before considering that maybe the person he just gave $10 to was not simply somebody on the street asking him for money. This was not a typical robbery because it was not, in fact, a robbery at all. To commit a robbery, you need three elements. The taking of property from the person or presence of another. That taking has to be accomplished by the means of force or a threat of the imminent use of force. And the defendant must be proven to have acted with knowledge as to both of those first two elements. Now, as far as the taking, to qualify as a taking, it has to be against the will of the person or the supposed victim. In this case, we have Dr. Banzel suggesting to Dante Wray, hey, what if I give you $10? Do you want $10? Can I give you some money? Even in the state's brief, they use page 7 of the brief. Dr. Banzel gave Dante Wray $10. Dante Wray received $10. So what was his motivation for giving $10? When he was asked why he did it, he said because he was trying to wrap this thing up quickly. He just wanted to get over this thing. This thing being what? This conversation. He wanted to be done interacting with Dante Wray. So he thought, you know what, if I give him $10, he'll quit boring me with his rambling on about his life story and the train ticket and this and that. He wanted to move on. He thought this guy probably is looking for some money. If I give him some money, maybe he'll move on and go on away. And then the defendant said $10 wasn't enough. And he thought he could continue to appeal to this kind doctor's sympathies. Yeah, $10 is all he got. So saying it's not enough, okay, maybe he hoped to get more. But saying you haven't given me as much as I want doesn't turn an interaction into a robbery. You have to have that threat of the imminent use of force. And I think it's important to recognize that the force threatened must be an imminent use of force. And it can't be just a purely subjective that this particular person on the street, victim, felt fear. You know, people can feel fear for a variety of reasons. Their socialization. One of the examples was that the defendant said if you don't want to get hurt, you'll listen and do what I say. So it's not entirely clear that those are exact words. Because Dr. Bonzo gives a variety, I think, three, maybe four different versions of what he said. He kind of clarified at one point. Well, he said something to the extent of. And he's asked about his personal interpretation of what Mr. Ray said. But even if, you know, that first statement was you're going to listen to me and do what I say, that's all the way back at Wagner and Van Buren. I'm sorry, Walden and Van Buren. They walk for another block and a half. Dante Ray is rambling in Dr. Bonzo's words about his circumstances and his life story and his woes. Dr. Bonzo is trying to sound sympathetic, kind of humoring him. Oh, you know, that's terrible. I feel bad for you. By the time they stop, this is quite a ways from that first statement, whatever it may have been. Dr. Ray has done nothing that would lead Dr. Bonzo to believe he's doing anything but trying to appeal to his sympathy. But after Bonzo gives him the $10, he then asks, can I go? No. His testimony there is sort of, he's paraphrasing his thought process. I know which portion of his testimony you're speaking of. But he thought to himself, here, take some money, can I go, is how he phrases it. He didn't actually ask Dante Ray to go. Then he asks, as you noted, Justice Mitchell, Mr. Ray said, oh, the ticket cost $60, $10 isn't going to do it. Dr. Bonzo shows him his wallet and says, hey, man, that's all I've got. That's all I've got. Dante Ray doesn't then, you know, punch him or put out any indication that there's any looming threat of violence. He just continues to ramble on about his story, why he needs money and the ticket. And then abruptly stops and walks out of his way. We don't know what led him to abruptly stop, whether he just thought, you know, this guy's not actually listening to me, or I'm not getting anywhere with this guy. Or I've taken all the money that he has. But then he wouldn't continue. So if you go to the record at page 140, Dr. Bonzo testifies, quote, he didn't simply walk away. He was telling me this story about how he needed $60 to buy this ticket and that he had a brother or something like that to visit. And basically he continued rambling to me until at some point he stopped and walked away. So, yeah, that's not somebody who's attempting to use force as a means of getting money. He's trying to make this doctor feel sorry for him. Dr. Bonzo, in his attempt to, you know, convey empathy and de-escalate in his mind, gave Dr. Harry every reason to believe that this appeal to the doctor's sympathy was going well. He seems sympathetic. He seems won over by my tale of woe. And that brings us to our third factor, is that for this to be a robbery, it's not enough that Dr. Bonzo says he was threatened, that he felt afraid, you know, he thought that his life might end. Dante Ray has to act with knowledge that all of this is going on. He has to know that he's taking that money against Dr. Bonzo's will, that it's not being offered to him because Dr. Bonzo is understanding and, you know, agrees that his life is hard and it's not out of sympathy. Dante Ray would have to know that Dr. Bonzo doesn't want to give him this money that he just offered. And he would have to know that the reason Dr. Bonzo is giving the money was because of the supposed threat that Dante Ray had made. He has no reason to believe that this money has been offered to him for any other reason than that his appeal to the doctor's sympathy was effective. This guy, you know, he's calm, he seems understanding, sympathetic. He offered me $10, great, I'll take the $10. And then when it becomes clear that that's about all there's going to be and there's not really a whole lot more sympathy coming, he goes on his way, as does Dr. Bonzo. Now, if this had been a robbery, you would think Dr. Bonzo would know that he had just been robbed right then. But instead, he walks for some five minutes thinking about it and says, hmm, maybe this guy wasn't just a guy on the street asking me money, asking me for money. Maybe he was robbing me. I think maybe I got mugged. And then he calls the police. No. As I said at the beginning, that's not typical. That's not typical. When you're robbed, when you have handed over your money out of fear because your power to resist has been overcome by fear, the language the cases use, you know that. You know that's why you gave up the money. You don't have to think about it. Counsel, we have to, I guess, ask ourselves whether any rational trier of fact could have found in favor of the prosecution or looking at it in favor of the prosecution that no reasonable trier of fact could have found as this judge did. And there is no evidence from which the judge could have found Dante Ray's knowledge. In fact, the prosecution in its closing argument conceded that Dr. Bonzo knew that there wasn't going to be an imminent threat of, or an imminent use of force. He knew that Dante Ray wouldn't get very far by throwing him down in the middle of, I think we're on Wells now, at about noon on a Thursday. We can see from the video there are cars and people. It's a fairly busy area. If Dr. Bonzo knew that a threat of force was not imminent, how could Dante Ray know that Dr. Bonzo anticipated an imminent threat of force? He didn't. There's nothing that suggests that. Again, the doctor made every effort to convey that he was not afraid, that he was sympathetic, that he's heard the story and wants to continue. Dante Ray doesn't know that he's putting on a case. I will reserve the rest of my time and ask that you reverse. Thank you. Thank you, Your Honor. Counsel, whenever you're ready. May it please the Court. Susan Wobbekind on behalf of the people of the State of Illinois. Your Honors, this was not an ongoing conversation as defense is now trying to characterize it. Instead, it was an ongoing threat of imminent force that defendant began from the moment he started, initiated the interaction with Dr. Bonzo. He yelled at Dr. Bonzo from across the street, approached him quickly from behind. I thought the testimony was he wasn't sure that the person who yelled at him from across the street was the same guy who came up to him. Correct. Okay, so he heard somebody hollering and then next thing he knew, somebody was rapidly approaching from behind. He assumed it was the same person. You're right, it was not 100% certain about that. So he approached him quickly from behind, spoke to him loudly, got in his personal space, and said, I was talking to you, and then immediately followed that up with, listen to what I say and do what I say if you don't want to get hurt. Now, maybe those aren't the exact words that defendant said. Dr. Bonzo did say it in different iterations as he testified. However, the intent was clear. Every time Dr. Bonzo said what defendant said to him, he testified that it was some iteration of, I will hurt you if you do not listen to me. And then the threat did not end at that point because as Dr. Bonzo tried to get away, defendant continued to follow him. He was in his space. He was in close proximity. He told him as they're walking, yes, he's talking about his circumstances, but he was also saying, be a man, don't disrespect me. He ordered Dr. Bonzo to stop walking. And this is not because Dr. Bonzo wanted to hear what he had to say. It was because he was told, listen to me or you will get hurt. So he listened to him and he stopped. We all get approached by people on the street, and we have developed an ability to get away from them in a crowded place particularly. It's a little unclear why he didn't just either call out to a passerby, say call 911, move away. What is going to a store? What is the problem in getting away from somebody? Well, he said that he did try to get away, and then he said he was trying to move to a more populated area, but he was also afraid. He did not feel free to leave. He did not feel free to ask for help. He said that out of fear he was just trying to not agitate defendant any more than he appeared to be. But he did continue to walk, so attempting to leave. Correct. He was trying to maintain the calm and not agitate defendant while at the same time trying to remove himself from the situation. He did say that he was evaluating how to protect himself. He wondered if he would see his family again. He was panicked, and he was in fight or flight mode. He was separated in fight or flight. No, I guess his fight was sort of to maintain his calm demeanor and try to de-escalate was his mode of fight. Finally, under these circumstances where Bonsal was feeling threatened and feeling as though it was an immediate threat because Dr. Bonsal did have the ability to carry out his threat. He was close to Dr. Bonsal at all times. It was face to face. Is there anything in the record about their relative sizes? No, I don't believe so. I think there is. Yes. Ray is short, and Bonsal is tall. Okay. It's a difference between 5'7 and 6'4 or something like that. Okay. Well, that's significant. So there's that as well. But the doctor is bigger. Yes. Oh, okay. Well, so Dr. Bonsal explicitly testified that he was afraid, and he believed if he didn't do what defendant said, he would be hurt. The trial court credited this testimony, and it's not now for us to reassess that credibility. We have to give that its due deference. So Dr. Bonsal said that he was afraid, and he directly linked his giving the money to defendant's threat. He testified he would not have given that money if defendant had not threatened him, had not followed him, had not stood close to him, or approached him out of the blue. This was a single series of continuous events that kept that threat alive from the beginning. What do you make of the defense argument that's really brought to a point in the reply brief that you've conceded the lack of evidence on the issue of knowledge, which would be a failure of proof, wouldn't it? Yes, but we didn't concede it. We argued in our brief that defendant's deliberate course of conduct caused Bonsal to give the money over. The knowledge element was implicit in our entire argument. We quoted all the elements of the statute, including the knowing element, and then asserted that defendant's words and conduct satisfied the statute. And as to defendant's knowledge, he raised the subject of needing money under the circumstances of this ongoing threat, under the circumstances of Bonsal being nervous and scared and feeling threatened. And then after receiving the money, he didn't show gratitude. He didn't show surprise. He immediately pocketed it, demanded more, and again told Bonsal, be a man, be honorable. These actions are not the actions of someone who thinks that he's getting a gift of charity. These are the actions of someone who knows that his behavior and actions and words are causing Bonsal to give the money over. And his argument that he did not know that the money was given involuntarily because Bonsal's demeanor was calm ignores the totality of those circumstances that I just explained, the overall arching situation of what was occurring. As for the taking, we know he took the money. That's not contested at this point. No, I think the defendant's point of view is it was a gift. He didn't take it. Well, he took possession of the money is what I meant by it's not contested. Possession is not an issue. Correct. And then as to the knowingly and the imminent threat, that is what I just explained, that his deliberate course of conduct throughout the entire series of events kept that threat alive. And his conduct after he received that money illustrates that he knew that Bonsal handed over his money because of that conduct. If there's no other questions, because of these reasons and those in our brief, we ask that you affirm the trial court's ruling. Thank you. And I will keep this brief. With respect to the knowledge element, this argument that knowledge was implicit throughout the State's brief is really not tenable. What was specific and explicit in the State's brief was the belief that no showing of intent was required, no showing of a mental state, that it was a general intent versus specific intent crime. They simply relied on old law. They didn't address the knowledge element. And any argument on that is, in fact, waived. You know, this idea that, well, Dante Ray clearly knows that this guy is not, you know, getting his money away charitably. He doesn't really want to give him $10. Well, does that make every panhandler on the streets of the City of Chicago a robber? As Justice McFarland noted earlier, we've all been approached on the streets, whether it's somebody looking for $10 to get a train ticket to somewhere or whether it's, you know, one of those organizations that's out there with their clipboards and wants you to sign up and do good for the environment.  No. I mean, maybe those ones are. The judge gave a cry. But Dante Ray did nothing different than any other panhandler on the streets of the City of Chicago. Yes, every iteration of Dr. Bonzel's recitation, he said something to the effect of, involved some sort of threat. But that's, you know, because Dr. Bonzel was frightened right away. The minute he saw this guy behind him, he took one look at him, decided he was scared. Everything got colored. Everything has been filtered through his state of panic, which he acknowledges. He was in a panic. When he spoke to the police, right after the event, though, he did not convey a threat. He said, you know, this guy said, you didn't listen to me. Now you're going to listen to me. Dr. Bonzel made an effort to deescalate by showing concern, expressing empathy, etc., etc. That was effective. Dante Ray certainly believed, by the time they stopped, that that's why he was being offered the money, that his appeal to the sympathy of Dr. Bonzel had been effective. I feel like I had one more point, and I think I've lost it. If this Court does not have any further questions, I do ask that you reverse Mr. Ray's conviction outright. Okay, very good. Thank you. Thank you for your presentations, and that will be taken under advisement.